R. A. HONEA *v.* BOARD OF SUPERVISORS OF MONROE COUNTY, AND BOARD OF SUPERVISORS OF MONROE COUNTY *v.* R. A. HONEA.

1. MANDAMUS. *Claim against county. Probate judge. Salary of.*

The rule that mandamus to enforce the payment of a claim against a county is only maintainable when such claim is founded on the judgment of the board of police (now board of supervisors) allowing the same was subject to an exception in favor of claims for salaries of probate judges under article 3, page 424, Code of 1857, which provided that "the boards of police shall assess sufficient county taxes to provide for the payment of said salaries, and the receipt of the judge shall be a sufficient voucher therefor." But after the adoption of the constitution of 1869, which abolished the office of probate judge, and the enactment of the Code of 1871, which omitted the provision quoted, claims for such salaries still unpaid became subject to the general rule above announced.

2. MANDAMUS.   *Upon county warrants.   Provisions in Codes of* 1857, 1871, *and* 1880, *construed.   Power of boards of supervisors.*

The Board of Supervisors of Monroe County authorized their president and clerk to issue scrip which should be receivable for taxes and other dues to the county.   The board afterward made the following order: that "upon examining the settlement as made by the president of this board with the clerk in vacation in regard to the issuance of the scrip of the county in pursuance of an order of the board, it appeared to the satisfaction of the board that just, legal, and properly authenticated vouchers had been produced for the full amount of the county scrip, which had been turned over to the clerk by the president of this board in pursuance to an order of this board to that effect.   It is, therefore, ordered by the board that each and every voucher as received by the president of this board and destroyed in pursuance of an order of this board and each and every settlement be and they are hereby singly and collectively approved, and that the settlements as made by the president in vacation be and they are hereby approved and confirmed."   Afterward the board ordered that this scrip be replaced by warrants.   *Held,* that it has been the manifest policy of this State as indicated by the statutes that boards of supervisors of counties shall only issue warrants for claims previously adjudicated by them, and which they have found to be valid charges against the county.   And under articles 31 and 32, Code of 1857 (§§ 1380 and 1381, Code of 1871, § 2159, Code of 1880), which provides that "all demands against the county shall be filed and preserved by the clerk and numbered to correspond to the warrants to be issued therefor, and the order allowing such claims shall be entered on the minutes, specifying the name of the claimant, the amount allowed, and on what account," the issuance of the scrip, the destruction of the claims upon which it was paid out, the attempted delegation of judicial authority to the president of the board to be exercised by him in vacation, and the order directing the clerk to issue other warrants for the scrip were flagrant violations of statutory provisions, and the payment of such warrants cannot be enforced by mandamus.

3. COUNTY WARRANTS.   *Innocent holder against county.*

There can be no innocent holder of a warrant against a county issued without authority of law, if the record of such warrant, provided for by a statute in such cases, discloses on its face the illegality of its issuance.

4. SAME. '*Failure to register under Act of* 1876.   *Acceptance by treasurer.*

The act of 1876 (Acts of 1876, page 31), which required all the outstanding warrants against Monroe County to be registered within a limited time, only declared that such warrants as were not so registered should not be received for taxes, but did not invalidate them.   And the treasurer by accepting warrants unregistered under this act in his settlement with the sheriff was barred of his right to use them in settlement with the county, but his acceptance of them did not operate as payment by the county, and they remained in his hands as his property.

APPEAL and CROSS-APPEAL from the Circuit Court of Monroe County.

HON. J. W. BUCHANAN, Judge.

R. A. Honea, as treasurer of Monroe County, received in his settlement with the sheriff certain warrants which had never been registered under an act of the legislature, passed in 1876 (Acts of 1876, p. 31), which provided that no warrants, then outstanding, should thereafter be received for public dues, unless registered within a limited time. In his settlement with the county, Honea received no credit for these warrants. He then, as individual owner, presented them to the board of supervisors and demanded that a tax be levied to pay them. The board having refused him any relief, Honea filed his petition in the circuit court, praying that the court issue a mandamus to compel the board to levy a tax to pay these warrants. The court ordered the mandamus as to the first class of warrants, mentioned in the opinion of this court, and refused it as to the others. From this decision both the plaintiff and the defendant appealed. A supplemental statement of the case will be found in the opinion of the court.

*Houston & Reynolds,* for the appellant and cross-appellee.

1. The salary of a probate judge is not required to be " credited and allowed on due proof." It is fixed by law and is payable semi-annually out of the county treasury, and the receipt of the judge shall be a sufficient voucher therefor. Code 1857, p. 423–424, art. 3.

Where there is a general law, fixing the amount of salary and prescribing its payment at particular periods, it is not necessary that there should be a special annual appropriation by act of the legislature. *Nichols* v. *Comptroller,* 4 Stew. & Port. 154; *Swann* v. *Josselyn,* 74 S. & M. 106; *Swann* v. *Turner,* 23 Miss. 565.

2. But that the county is liable for the warrant though issued improperly and without any order of the board of police is apparent from another view.

The county owed the debt to Davis, it was a valid obligation of the county, and that debt has been discharged by warrant No. 600, which the county claims was issued without authority.

The county has received value for the warrant, it has paid the debt which it owed to its probate judge, and as it would not be honest and consistent with fair dealing for the county to repudiate the warrant, it is estopped to deny its validity. *Alleghany City* v. *McClurkan*, 14 Pa. St. 81 ; 17 Am. R. 702 ; *State Bd. of Ag.* v. *Citizens' St. R.*, 47 Ind. 407 ; *Hitchcock* v. *Galveston*, 96 U. S. R. 341–351.

3. The Code of 1857 provides that the receipt of the judge shall be a sufficient voucher to the treasurer for the payment of his salary. P. 424.

It is further provided that money shall not be disbursed by the county treasurer except on warrants. Code 57, 419.

Construing these provisions together, we think that the proper conclusion is that a warrant was necessary to be issued to the probate judge for his salary, but that no order of the board of police was required therefor, and the receipt of the probate judge or his indorsement of the warrant was all that was required. Such seems from the several warrants which are in contest in this case to have been the mode of procedure in this county. We submit that it was sanctioned by law, and that a warrant issued in this way, without any order, to pay a probate judge's salary, is valid, and that a mandamus will lie to enforce its payment.

4. If the issuance of the scrip was *ultra vires*, and if the warrants which are sued upon are not formal and supported by proper orders of the board of supervisors, the contracts which were within the power of the county to make, and which the scrip has discharged, makes the warrants issued to pay the contracts binding on the county and estops it from setting up the invalidity of scrip or warrant. The issuance of the scrip *was not forbidden by law*, though there may have been a want of power to issue them. At most it was a defect of power. The county, having received the benefits from the parties to whom the scrip was issued, cannot object that it was not empowered to perform what it gave in return in the mode in which it promised to perform, and the mode of performance, if not positively forbidden by law, but the power not

granted, is binding. *Hitchcock* v. *Galveston,* 96 U. S. 341–351; *Alleghany City* v. *McClurkan,* 14 Pa. St. 81; 47 Ind. 407; 58 Miss. 301.

5. There are two acts of the legislature, passed in 1876, for the registration of county warrants—one general and the other applying to the counties of Monroe and Winston. The first will be found on page 31 of Acts of 1876, and the other on page 325. The latter act applied alone to school warrants, and was a provision for their payment in installments, with interest. The former required the registration of all warrants within six months of the date of the order of the board publishing notice of the act. The second section provides, That warrants not registered shall not be received in payment of any county dues, and shall not be received in payment of county taxes. There was no provision, as in the act in reference to Yazoo County, that warrants not registered " shall be forever barred as a debt against the county."

*G. J. Buchanan,* on the same side.

1. The issuance of the warrants did not create any debt, that existed before that time, and the question is, was the board acting beyond its general powers when they issued the warrants to discharge the debt for which the scrip had been paid out.

2. It was not designed by the act of the legislature, March 23, 1876, that a warrant, by reason of non-registration, should be barred. The language of the act is too plain to admit of doubt. The purpose of the act was to enable the county to know what outstanding warrants might be offered in payment of county dues, and thereby enable it to provide with some degree of certainty for the disbursement of current county expenses.

3. It is claimed that if the unregistered warrants were received by the appellant as county treasurer, that they by such reception became *functi officio.* The warrant does not perform its complete function until it has been reported to the board of supervisors. R. A. Honea, though county treasurer, had a perfect right to become the owner of the unregistered warrants. According to the provisions of the act mentioned he could only have received them and owned them as an individual.

*Sykes & Bristow*, for the appellee and cross-appellant.

1. We deny the position of counsel that "the receipt of a county warrant by the treasurer in his settlement with the sheriff, and which warrant he is authorized to receive in settlement, does not bar the warrant, or operate as a payment *unless* the treasurer gets credit for it in the settlement of his accounts with the county."

We submit, on the contrary, that a county warrant coming to the hands of the county treasurer *can never legally get into circulation again.* Being forbidden by law to *speculate* in them (and even in the absence of such a law), he can only acquire warrants, issued to other persons, by *paying them* and taking them up from *individuals*, or by receiving them in settlement with the tax collector. In either case they are *functi officio*, their "*mandate is exhausted.*" If he received them *legally*, he can get credit for them in his accounting; if he received them *illegally*, he can get no credit. In neither case can they ever reassume their original position of *outstanding obligations.*

2. Except for the three warrants allowed by the court, and for whose payment a final mandamus was awarded (incorrectly, as we have tried to show), no order of the board was ever "entered on the minutes allowing the claim, specifying the name of the claimant, the amount allowed, and on what account," as required by law. Code 1857, p. 419, § 32; Code 1871, § 1381.

It is impossible to overrate the importance of this most vital and salutary provision of law. It is *so* easy to comply with it; the consequences of disregarding it might be *so* disastrous, even involving county bankruptcy.

It is clear that the legislature intended that when the county legislature ordered the disbursement of any of the people's money, there were three things that should under no circumstances be left to the uncertainties of parol or outside proof, to wit: 1, *The name of the claimant;* 2, *The amount allowed;* and, 3, *On what account.* These things must be entered and "SPECIFIED" on the minutes. This rule applies to "*all demands* and *accounts against the county.*"

3. But counsel claim that there is *one* exception to the above

rule, and that the *salary of probate judge* is *one* demand against the county which does *not* require an order "entered on the minutes specifying the name of the claimant, the amount allowed, and on what account."

If this is true, there ought to be a very plain and emphatic provision to that effect. When the statute provides that the order allowing any demand or account against the county should be thus particularly entered on the minutes, when it positively forbids *any* money being paid out of the county treasury except on such order, or the order of some court lawfully authorized to allow the same, one would say that the *exception* should be by statutory provision so plain that "the wayfaring man, though a fool, should not err therein."

Where is the excepting statute? Counsel for Honea say it is *article 3, page* 423, *Code* 1857, providing that judges of probate shall receive certain designated salaries, "payable out of the treasury of their respective counties," and that "the boards of police shall assess sufficient county taxes to provide for the prompt payment of the said salaries, *and the receipt of the judge shall be a sufficient voucher to the treasurer therefor.*"

It is this last clause that counsel contend makes this case an exception to the salutary rule of *article 32, page* 419, and *article* 162, *page* 132.

We humbly submit it does not create even a reasonable *implication.*

However valid a claim may be against the county, no warrant can be issued on the treasurer therefor, and no mandamus can be maintained unless there is an *order* on the *minutes,* as required by law. *Klein* v. *Supervisors,* 58 Miss. 540.

4. Where the board of supervisors violates the law and does an *ultra vires* act, the county cannot be held liable, even though it is afterward *ratified in a legal way,* and though the county receives the benefits of its illegal act. *Supervisors* v. *Klein,* 51 Miss. 807 ; *Supervisors* v. *Arrighi,* 54 Miss. 668.

COOPER, C. J., delivered the opinion of the court.

63 Miss.—12

This is an action of mandamus to enforce the payment of several warrants held by the plaintiff, which for convenience may be classified as follows :   First, warrants issued in 1867 pursuant to orders of the board of police (now supervisors), for the salary of the probate judge of the county—these warrants are without the official seal of the clerk, but signed by him as clerk of the board; second, a warrant issued by the clerk of the board in 1867 without any order of the board, for the payment of the salary of the probate judge; third, warrants issued by the clerk, in pursuance of a general order of the board, in lieu of certain scrip before that time issued and circulated by the board as money.

It is settled by several decisions of this court that the right of a party to maintain mandamus to enforce the payment of a claim against a county must be founded on a judgment of the board allowing the claim, and not upon the warrant, which is but the order or authority to the fiscal officer to pay the judgment awarded to the creditor.   *Polk* v. *Supervisors*, 52 Miss. 422 ; *Arrighi* v. *Supervisors*, 54 Miss. 672 ; *Klein* v. *Supervisors*, 58 Miss. 540.   The warrant performs two functions.   First, that of an authority to the fiscal officer to pay the amount to the holder, and secondly, as a voucher to the officer in his settlement with the boards of supervisors.   But these warrants are not the judgments of the board, and are neither the foundation nor the measure of the rights of the creditor, who must sustain his petition for mandamus by the exhibition of a valid judgment of the board, and who, doing this, is entitled to its enforcement regardless of any informality in the warrant issued for its payment.

Though claims against the counties have in almost all instances been required to be passed on by the county board before they could be paid by the treasurer, a different rule was declared in reference to the payment of the salary of the probate judges of the several counties by article 3, page 424, of the Code of 1857, which provides what salary shall be paid to each judge, and that "the boards of police shall assess sufficient county taxes to provide for the payment of the said salaries, and the receipt of the judge shall be a sufficient voucher to the treasurer therefor."   This

provision relieved against the necessity of presenting to the board this particular claim against the county, since its amount was fixed by law, and all departments of the government took notice of the person who filled the office to which the salary attached. But there was no reason why the incumbent of the office might not present his account, which still was a claim against the county, to the board and have it allowed as other claims, and since this was done, as to the salary of the judge, for which the warrants of the first class were issued, we approve the action of the court in award-ing mandamus for the payment of the judgment on which they were issued. The absence of the seal of the court from the war-rants detracts nothing from the validity of the judgments on which they were issued.

So long as the Code of 1857 was in force, the treasurer of the county might, upon receipt of the judge, pay the salary due, but after the adoption of the constitution of 1869, in which the judi-cial system of the State was remodeled, there was no such office as that of judge of probates, and the Code of 1871 omitted the pro-vision for the payment of the salary of such judge, and after its adoption one who had filled that office, and to whom the county was indebted on account of his salary, was put to the necessity of presenting his claim to the board of supervisors for allowance, as other creditors were required to do. The Code of 1857 permitted the judge to have his claim paid upon receipting to the treasurer therefor, but one who failed to avail himself of this privilege while the law was in operation was, by its repeal, left to his remedy as a general creditor. The Code of 1857 did not contemplate that a warrant should be issued for the salary of the probate judge, but that the treasurer, knowing the amount of the salary and the per-son by whom the office was filled, should, upon the mere receipt of the judge, make payment of the salary due. The action of the clerk in issuing the warrant for the salary of the judge, without an order of the board of police, did not change the character of the claim ; there was no authority for the warrant, and after its issuance as before, the judge might have collected his salary by re-ceipting to the treasurer, or he might have presented his claim to

the board for allowance. Having failed to receive payment from the treasurer during the operation of the law, and having failed to procure an 'order allowing it by the board, he cannot maintain mandamus to enforce its payment.

The history of the warrants of the third class is this: On February 12, 1866, the board of police made an order authorizing the president and clerk of the board to issue warrants in certain specified denominations to the amount of fifteen thousand dollars, which warrants the board declared should be receivable for all dues to the county. On January 10, 1867, an order was made by the board directing that the warrants or scrip thus issued should be receivable for all taxes, and this order recites that, " upon examining the settlements as made by the president of this board, with the clerk in vacation, in regard to the issuing of the scrip of the county in pursuance of an order of this board, it appeared to the satisfaction of the board that just, legal, and perfectly authenticated vouchers had been produced for the full amount of county scrip which had been turned over to the clerk by the president of this board, in pursuance to an order of this board to that effect. It is therefore ordered by the board that each and every voucher as received by the president of this board, *and destroyed, in pursuance of an order of this board,* and each and every settlement be and they are hereby, *singly and collectively,* approved, and that the settlements as made by the president of this board in vacation be and they are hereby in all things approved and confirmed."

At the April term, 1871, the board of supervisors entered an order by which all holders of the scrip issued as above stated should, within thirty days from the publication of the order, present the same to the clerk, who was directed to take up the same and issue warrants on the treasurer in lieu thereof, and the clerk was directed to make report of his action to a subsequent term of the board.

It is admitted that one T. S. Hampton was then the holder of a part of this scrip, which he surrendered to the clerk, and received in lieu thereof the warrants designated in this opinion as the warrants of the third class. The clerk made report of his action to

the May term of the board, and it was then approved and con-
firmed by the board, which also then directed the scrip so taken up
to be burned in its presence.   On the trial of this cause it was ad-
mitted that proof could be made that the scrip issued as aforesaid
had been used in payment of valid claims against the county, but
the court excluded such evidence as incompetent.

The relator contended that the facts proved and offered to be
proved sufficiently showed " an order of the board allowing the
warrants ;" or if they did not, that enough was shown to estop the
county from defending against the warrants.   The court below re-
jected these views, and declined to award mandamus for their pay-
ment.

We approve the judgment of the court in this respect.   There
was no semblance of authority for the issuance by the board of the
scrip directed by the order of February 12, 1866.   On the con-
trary, the manifest policy of the law, as indicated by the statutes,
is and always has been that these bodies shall only issue warrants
in payment of claims previously adjudicated by the board and
found to be valid charges against the county.   Articles 31 and 32,
page 419, of Code of 1857, provided that "all demands against
the county shall be filed and preserved by the clerk, and numbered
to correspond with the warrants to be issued therefor ; and the
order allowing such claims shall be entered on the minutes, speci-
fying the name of the claimant, the amount allowed, and on what
account."

This provision was brought forward into the Code of 1871, and
is yet the law.   Code of 1871, §§ 1380, 1381 ; Code of 1880, §
2159.

The obvious purpose of these specific and restrictive provisions
is to guard the public moneys from unlawful appropriations, and to
charge every person into whose hands warrants may come with
notice of any defect of authority or its exercise in making the
orders upon which they are issued.   As against the county, there
can be no innocent holder of a warrant issued without authority of
law, if the record provided by the statute discloses on its face the
illegality of its issuance.   The issuance of the scrip, the destruc-

tion of the "claims" upon which it was paid out, the attempted delegation of judicial authority to the president of the board, to be exercised by him in vacation, the order directing the clerk to issue other warrants for the "scrip" surrendered by the holders, were each and all plain, palpable, and flagrant violations of unequivocal statutory provisions. Such illegal and vicious acts were not judgments of the board in any sense of the word, for the proceedings were not only irregular, but were illegal, and themselves exhibited a total want of jurisdiction over the subject-matter. No claims against the county were presented for adjudication by the board, but the scheme was to float scrip of the county as money, and it was paid out by the president and clerk in satisfaction of demands adjudicated by these officers in vacation, and the board, at a subsequent meeting, ratified and approved their action upon each and all of the claims "singly and collectively."

So also when the scrip was to be retired, "presentation to the clerk" was substituted for that presentation to and adjudication by the board which the statute required; and the ratification by the board of his action can add nothing to its validity, since there is no authority in law for his act, and none could be conferred by the board.

Whether the holders of these warrants may disregard all these illegal acts and recover upon the consideration afforded by the "claims" paid by the scrip is not a subject for consideration in this action. It is only necessary to say that the warrants, payment of which is sought to be coerced by this suit, are not founded on any valid judgments of the board, and because they are not mandamus, does not lie.

The act of 1876, requiring all outstanding warrants against the county to be registered, declared only that if they were not registered as directed they should not be receivable in payment of taxes. The warrants themselves were not declared to be outlawed.

Honea, by accepting unregistered warrants in his settlement with the sheriff, was barred of his right to use them in settlements with the county; but since they were not vouchers in such settlements, their receipt by him did not operate as payment by the county, but

left the warrants in his hands as his property ; and though he was treasurer, this did not preclude him from coercing payment by any means open to all holders of warrants.

*The judgment of the court below is in all things affirmed.*